1  AARONSON & AARONSON
   ARTHUR AARONSON, SBN 64988
2  16133 Ventura Boulevard, Suite 675
   Encino, California 91436
3  Phone: (818) 783-3858
   Fax: (818) 783-3825
4

5  Attorneys for Plaintiff, Matthew Jones

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9  MATTHEW JONES, an individual          )   Case No. CV 11-07317 JHN (JEMx)
                                         )
10               Plaintiffs,             )   COMPLAINT FOR DAMAGES AND
                                         )   INJUNCTIVE RELIEF FOR:
11       vs.                             )
                                         )   1. COPYRIGHT INFRINGEMENT
12 DIRT BLOSSOM, INC., a California       )
   corporation; DAVID JACOBSON, an       )   2. BREACH OF CONTRACT
13 individual; LARRY RATTNER, an         )
   individual; and DOES 1-20,            )   3. FRAUD
14                                       )
                 Defendants.             )   4. BREACH OF FIDUCIARY DUTIES
15                                       )
                                         )   5. INVOLUNTARY DISSOLUTION
16 _____)

17
   Plaintiff, MATTHEW JONES, herein alleges and avers as follows:
18

19
                     JURISDICTION AND VENUE
20

21      1.      This Court has subject matter jurisdiction over Plaintiff's claims for copyright

22 infringement and related claims pursuant to 17 U.S.C. §§101, et. seq., 28 U.S.C. §§1331 and

23 1338(a).

24      2.      This Court has supplemental jurisdiction over Plaintiff's claims arising under the

25 laws of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related to

26 Plaintiff's claims under Federal Law that they form part of the same case or controversy and

27 derive from a common nucleus of operative fact.

28

_____
                    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

3.      Venue in this judicial district is proper under 28 U.S.C. §1391 and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## THE PARTIES

4.      Plaintiff is an individual who at all times relevant hereto is and was a resident of Charlottesville, Virginia.

5.      Plaintiff is the author of the novel "Boot Tracks" and the author of the screenplay "Boot Tracks" which was derived from the Plaintiff's novel.

6.      Plaintiff is the owner of the registered copyright to the screenplay "Boot Tracks," having the registration number PAu003549344 registered on or about March 24, 2011.

7.      Plaintiff is informed and believes and thereon alleges that Defendant Dirt Blossom, Inc. ("Dirt Blossom") is, and at all relevant times was a corporation organized and existing under the laws of the State of California and having its principal place of business located at 369 S. Doheny Drive, PMB 1105, Beverly Hills, California 90211.

8.      Plaintiff is informed and believes that Defendant Dirt Blossom was formed for the purpose of producing motion pictures specifically, "Boot Tracks."

9.      Plaintiff is, and at all times relevant hereto, was an officer, director and minority shareholder of Defendant Dirt Blossom.

10.     Plaintiff is informed and believes and thereon alleges that Defendant Larry Rattner ("Rattner") is an individual who at all times relevant hereto is and was a resident of the County of Los Angeles, California. Rattner is, and at all relevant times herein, was an officer, director and shareholder of Defendant Dirt Blossom.

11.     Plaintiff is informed and believes and thereon alleges that Defendant David Jacobson ("Jacobson") is an individual who at all relevant times hereto is and was a resident of the County of Los Angeles, California. Jacobson is, and at all relevant times herein, was an officer, director and shareholder of Defendant Dirt Blossom.

12.     The true names and capacities of Does 1 through 20 (the "Doe Defendants") are currently unknown to Plaintiff who therefore sues said Doe Defendants by their fictitious names.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Plaintiff will request leave of this court to amend this complaint to allege the true names and

2   capacities when ascertained.

3         13.    Doe Defendants 1 through 20 are or were at all times relevant herein employees,

4   agents, and/or members of the Board of Directors of Defendant Blossom and each of the Doe

5   Defendants were substantially involved in the misconduct alleged and averred herein and

6   are legally responsible for the damages caused thereby.

7                 **GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

8         14.    In or about 2006, Plaintiff wrote and published a novel entitled "Boot Tracks" (the

9   "Novel"). The Novel is a psychological thriller about a failed murder for hire plot and the ensuing

10   relationship between the main characters.

11         15.    In or about the middle of 2008 Plaintiff adapted the Novel into a screenplay also

12   entitled Boot Tracks (the "Screenplay") (together, the novel and the screenplay shall be referred to

13   as "Artistic Works"). The Screenplay is registered with the United States Copyright office under

14   the registration number PAu003549344.

15         16.    Plaintiff is informed and believes and thereon alleges that Defendants Jacobson and

16   Rattner approached Plaintiff with promises of having the ability to get the Boot Tracks Screenplay

17   financed and produced as a motion picture. During this "courting" period, Plaintiff continuously

18   made clear to Defendants Jacobson and Rattner that he was not interested in having the Screenplay

19   financed and produced if it would cause significant artistic changes to the Screenplay. Defendant

20   Jacobson and Rattner promised that the Screenplay would not be changed, that they understood

21   the unique artistic integrity of the Screenplay and that if changes did have to be made in order to

22   secure financing that Plaintiff would be the only one allowed to make said changes, which would

23   be consistent with the authenticity of the Novel. This understanding was eventually reduced to

24   writing in the form of an option agreement (the "Option Agreement").

25         17.    Plaintiff is informed and believes and thereon alleges that in furtherance of

26   inducing Plaintiff to option the Screenplay to them, they would make Plaintiff an executive

27   producer and one-third shareholder and board member of Defendant production company Dirt

28   Blossom. To that end, on or about October 25, 2010 Defendants Jacobson and Rattner assigned

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    three-hundred and thirty-three (333) shares of common stock to Plaintiff. Additionally, on or about

2    October 25, 2010, Defendants Rattner and Jacobson and Plaintiff were elected as officers and

3    directors of Defendant Dirt Blossom. Defendant Rattner, Defendant Jacobson and Plaintiff are the

4    only three shareholders, directors and officers.

5            18.    Plaintiff is informed and believes and thereon alleges that the promises Defendants

6    Rattner and Jacobson made to Plaintiff were made fraudulently with the intent to induce Plaintiff

7    to signing an option agreement that would give Defendants Rattner and Jacobson access to the

8    Screenplay so they could misappropriate it and use it in the way they wanted without regard to the

9    promises made to Plaintiff.

10           19.    Plaintiff is informed and believes and thereon alleges that "Boot Tracks" is the only

11   film being produced by Defendants and that there are no other projects in development.

12           20.    Plaintiff is informed and believes and thereon alleges that Defendant Dirt Blossom

13   is, and at all relevant times mentioned herein, was being used solely for the purpose of defrauding

14   Plaintiff out of his rights and interests in and to the Screenplay.

15           21.    On or about November 10, 2010, Plaintiff entered into the Option Agreement for

16   the purchase of the rights to the Screenplay including the right to produce the Screenplay into a

17   motion picture. A true and correct copy of the Option Agreement is attached hereto and

18   incorporated herein as **Exhibit 1**.

19           22.    Plaintiff is informed and believes and thereon alleges that the option agreement

20   specifically states among other things, that:

21                 "All creative decisions relative to the making and producing of

22                 "Boot Tracks" (The Picture) will be determined by the creative

23                 participants of "Boot Tracks" (the Picture) – the director, David

24                 Jacobson, producer Larry Rattner and writer/co-producer Matthew

25                 F Jones (the "CP") and shall be jointly discussed and shared by all

26                 three members. If there is not a unanimous consensus on any issue

27                 or element, such decisions will be made on a majority vote

28                 whereby each of the CP has an equal vote."

AARONSON & AARONSON
16023 Ventura Boulevard, Suite 675
Encino, California 91436

- 4 -

23. Plaintiff is informed and believes and thereon alleges that without exercising the option to purchase the Screenplay and without consulting Plaintiff and entirely unbeknownst to Plaintiff, Defendant Jacobson and Defendant Rattner made unauthorized changes to the Screenplay in such a manner that significantly deviates from the Screenplay and from the authenticity of the Novel, thereby directly infringing Plaintiff's copyrights and creating an unauthorized derivative work from Plaintiff's registered copyright.

24. Plaintiff is informed and believes and thereon alleges that such changes were never "jointly discussed and shared by all three members" and that there was never a vote concerning the changes as was required by the option agreement.

25. Plaintiff is informed and believes and thereon alleges that said unauthorized changes were made in order to secure a financing and distribution deal without the knowledge or consent of Plaintiff.

26. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, not only made unauthorized changes to the Screenplay but that they began production and in fact concluded the principal cinematography of the motion picture without ever exercising the option to purchase Plaintiff's copyrighted work and therefore egregiously and intentionally infringed Plaintiffs copyright.

27. In or about August of 2011, Plaintiff discovered that filming had concluded. Upon such discovery Plaintiff confronted Defendants Rattner and Jacobson whom were unresponsive to Plaintiffs concerns.

28. On or about August 24, 2011, upon learning that Plaintiff may bring a lawsuit to enforce his rights under United States Copyright law, the Option Agreement and his rights as a minority shareholder, Defendants purported to exercise the option to purchase the Screenplay.

## FIRST CAUSE OF ACTION

### (Copyright Infringement -17 U.S.C. §§ 101, et. seq)

29. Plaintiff alleges and incorporates by reference all of the allegations stated in paragraphs 1 through 28 of this Complaint as though set forth in full.

AARONSON & AARONSON
16233 Ventura Boulevard, Suite 675
Encino, California 91436

30.     Defendants have directly infringed Plaintiff's copyrighted works by not exercising the option to purchase said rights in the Screenplay, creating derivative works from, reproducing, distributing and/or displaying the copyrighted works in violation of Plaintiff's exclusive rights under the Copyright Act. Plaintiff has not licensed or otherwise authorized Defendants' use of or creation of derivative works from, reproduction, distribution or display of the copyrighted Screenplay.

31.     Plaintiff is informed and believes and on thereon alleges that Defendant's infringement of Plaintiff's copyrights in the Screenplay, and continues to be, intentional, willful and in conscious disregard of Plaintiff's rights.

32.     Plaintiff is informed and believes and on thereon alleges that Defendants have realized profit by virtue of their infringement of Plaintiff's copyrights.

33.     Plaintiff has sustained economic damage as a result of Defendants' infringement of Plaintiff's copyrights in an amount to be proven at trial.

34.     Plaintiff is entitled to recover the actual damages he has suffered and/or any profits gained by Defendants that are attributable to its acts of copyright infringement pursuant to 17 U.S.C. §504(b). Alternatively, Plaintiff is entitled to the maximum statutory damages allowed under 17 U.S.C. §504(c) based on Defendant's willful acts of copyright infringement. Plaintiff will make its election at the appropriate time before final judgment is rendered.

35.     Pursuant to 17 U.S.C. §502, Plaintiff is entitled to an injunction against Defendants' continuing reproduction, distribution and display of Plaintiff's copyrighted works.

36.     Plaintiff is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. §505.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

37.     Plaintiff alleges and incorporates by reference all of the allegations stated in paragraphs 1 through 36 of this Complaint as though set forth in full.

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

38.     Plaintiff is informed and believes and thereon alleges that Defendants Rattner and Jacobson breached the Option Agreement by, among other things, doing or failing to do the following without ever exercising the option to purchase Plaintiff's Screenplay:

    a.  Making substantial changes to the Screenplay without jointly discussing, sharing and voting on said changes, in essence creating a derivative work;

    b.  Casting the movie;

    c.  Filming the movie through completion of principal photography;

    d.  Not notifying Plaintiff of the location of the film shoot;

    e.  Failing to provide transportation and accommodations to Plaintiff during the filming of the Screenplay on a most favored nations basis with Defendants Rattner and Jacobson; and

    f.  Failing to ensure that Plaintiff receives credit for the Screenplay as provided for in the Option Agreement in all locations that Defendants Rattner and Jacobson were to receive credit.

39.     Plaintiff has fully performed all material duties required of him under the Option Agreement except those that he was prevented or excluded from performing due to Defendants' intentional and wrongful actions.

40.     As a direct and proximate cause of Defendants' breach of contract, Plaintiff has been and continues to suffer damages in an amount to be determined at trial, but which is in excess of $500,000.00.

### THIRD CAUSE OF ACTION

### (Fraud)

41.     Plaintiff alleges and incorporates by reference all of the allegations stated in paragraphs 1 through 40 of this Complaint as though set forth in full.

42.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendants made certain promises and representations to Plaintiff that, among other things, Plaintiff would have a say and vote in the use of his copyright, that Plaintiff would be the only one to make such creative changes if necessary and that he would receive certain titles and credits in

AARONSON & AARONSON
16033 Ventura Boulevard, Suite 675
Encino, California 91436

- 7 -

the production of the motion picture on a "most favored nations" bases with Defendants Rattner and Jacobson.

43.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, the aforementioned promises and representations, made by Defendants to Plaintiff, were false in that the Defendants made such promises and representations fraudulently only to gain access to and misappropriate Plaintiff's original artistic works for their own benefit.

44.     Had Plaintiff known that Defendants' promises and representations were false and only made to gain access to Plaintiff's artistic works, Plaintiff would not have agreed to do business with Defendants and would have never signed the option contract.

45.     Plaintiff is informed and believes and thereon alleges that Defendants Rattner and Jacobson conspired to conceal from Plaintiff that they made changes to the Screenplay, that financing had been secured based on the unauthorized use of Plaintiff's artistic works and that filming had been completed.

46.     As a direct and proximate cause of Defendants' fraudulent and deceitful conduct, Plaintiff has been injured and is entitled to damages in an amount to be determined at trial, but which is in excess of $500,000.00.

47.     The aforementioned and hereinafter described conduct of the Defendants, including intentional misrepresentations, fraud, deceit, or concealment of material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiffs of his property or legal rights or otherwise causing injury, was despicable conduct that subjected Plaintiffs to unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages in the amount of $1,000,000.00.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

48.     Plaintiff alleges and incorporates by reference all of the allegations stated in paragraphs 1 through 47 of this Complaint as though set forth in full.

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

49.     Plaintiff is informed and believes and thereon alleges that Defendants Rattner and Jacobson had a fiduciary duty to Plaintiff both as majority shareholders and day to day managers of Defendant Dirt Blossom, as well as under the promises documented in the option agreement.

50.     Plaintiff is informed and believes and thereon alleges that sometime in or about January of 2011, in breach of their fiduciary duties to Plaintiff, Defendants Rattner and Jacobson engaged in a course of misconduct and deceit by, among other things, willfully infringing Plaintiff's copyright in order to secure a financing deal without the knowledge or consent of Plaintiff and without ever exercising the option to purchase the Screenplay.

51.     As a direct and proximate cause of Defendants' breach of fiduciary duties, Plaintiff has been injured and is entitled to damages in an amount to be determined at trial, but which is in excess of $500,000.00.

52.     Because Defendants breach of fiduciary duty was the result of fraudulent and despicable conduct carried on with a willful and conscious disregard of Plaintiff's rights and interests and because they were done with the intent to injure Plaintiff and deprive him of his artistic works and other legal rights, Defendants' conduct was malicious as defined in California Civil Code §3294.  Hence, Plaintiff should receive punitive damages in an amount appropriate to punish and set an example of Defendants Rattner and Jacobson.

**FIFTH CAUSE OF ACTION**

**(Dissolution of Dirt Blossom)**

53.     Plaintiff alleges and incorporates by reference all of the allegations stated in paragraphs 1 through 52 of this Complaint as though set forth in full.

54.     Plaintiff is informed and believes that Defendant Dirt Blossom is not subject to the Banking Law, Public Utilities Law, Savings and Loan Association Act, or Sections 1010-1062 of the Insurance Code.

55.     Plaintiff is informed and believes and thereon alleges that he is the holder of record of an aggregate of 333 common shares of stock on Defendant Dirt Blossom. The shares held by Plaintiff constitute at least 331/3 percent of the number of outstanding common shares of

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

1  Defendant Dirt Blossom exclusive of the shares owned by Defendants Rattner and Jacobson who,

2  as alleged herein, personally participated in the fraudulent transactions complained of herein.

3      56.      Plaintiff is informed and believes and thereon alleges that the option agreement for

4  the Screenplay would be used to secure a financing and distribution deal for the benefit of

5  Defendant Dirt Blossom and its shareholders while preserving the artistic integrity of Plaintiff's

6  Screenplay.

7      57.      Plaintiff is informed and believes an thereon alleges that Defendants Rattner and

8  Jacobson violated Plaintiff's copyright and other legal right in his artistic works by rewriting

9  portions of the Screenplay without the consent or approval of Plaintiff thereby breaching the

10 option agreement which is Defendant Dirt Blossom's main asset.

11     58.      Plaintiff is informed and believes and thereon alleges that Defendants Rattner and

12 Jacobson secured a financing deal on behalf of Defendant Dirt Blossom by misrepresenting the

13 true ownership of the copyright to said financing company.

14     59.      Plaintiff is informed and believes and thereon alleges that Defendants Rattner and

15 Jacobson who have control of the Defendant Dirt Blossom have been guilty of or have knowingly

16 approved persistent and pervasive fraud, mismanagement or abuse of authority or persistent

17 unfairness toward Plaintiff shareholder and its property is being misapplied or wasted by

18 Defendants by engaging in the wrongful course of conduct alleged above.

19     60.      Based on the forgoing, Plaintiff requests that this court decree a winding up and

20 dissolution of Defendant Dirt Blossom and entertain such proceedings as may be necessary or

21 proper for the involuntary winding up or dissolution of defendant Dirt Blossom and award

22 Plaintiff for the costs of this suit herein incurred, in addition to further relief as the court may

23 deem proper according to proof at trial.

24

25                              **PRAYER FOR RELIEF**

26     WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

27 On the **FIRST CAUSE OF ACTION**

28

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1       1.    A grant of injunctive relief enjoining Defendants from displaying, releasing or

2 otherwise disseminating or using the Screenplay, novel or motion picture

3       2.    Awarding Plaintiff all of Defendants' profits and all damages sustained by Plaintiff

4 as a result of Defendants wrongful acts, and such other compensatory damages as the Court deems

5 fair and appropriate pursuant to 17 U.S.C. §504(b);

6       3.    Awarding Plaintiff statutory damages under 17 U.S.C. §504(c) for willful

7 infringement;

8       4.    Awarding Plaintiff attorney's fees, costs and interest pursuant to 17 U.S.C. §505;

9       5.    Awarding Plaintiff any other relief that the Court deems just and proper.

10 On the **SECOND CAUSE OF ACTION**

11       6.    Awarding Plaintiff all compensatory and consequential damages in an amount to be

12 determined at trial in excess of $500,000.00;

13       7.    Awarding Plaintiff attorney's fees, costs and interest;

14 On the **THIRD CAUSE OF ACTION**

15       8.    Awarding Plaintiff all compensatory and consequential damages in an amount to be

16 determined at trial in excess of $500,000.00;

17       9.    Awarding Plaintiff punitive damages in excess of $1,000,000.00 as Defendants'

18 conduct was malicious as defined in California Civil Code §3294.

19      10.    Awarding Plaintiff attorney's fees, costs and interest;

20 On the **FOURTH CAUSE OF ACTION**

21      11.    Awarding Plaintiff all compensatory and consequential damages in an amount to be

22 determined at trial in excess of $500,000.00

23      12.    Awarding Plaintiff attorney's fees, costs and interest;

24 On the **FIFTH CAUSE OF ACTION**

25      13.    Plaintiff requests that this court decree a winding up and dissolution of Defendant

26 Dirt Blossom;

27      14.    Awarding Plaintiff attorney's fees, costs and interest;

28 **ON ALL CAUSES OF ACTION**

AARONSON & AARONSON
16133 Ventura Boulevard, Suite 675
Encino, California 91436

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1       15.    Awarding Plaintiff any other relief that the Court deems just and proper according
2    to proof at trial.
3
4    DATED:  September 1, 2011          AARONSON & AARONSON
5
6                               By _____
7                           ARTHUR AARONSON, Attorneys for Plaintiff,
8                           MATTHEW JONES.

AARONSON & AARONSON
16813 Ventura Boulevard, Suite 675
Encino, California 91436

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Dirt Blossom, Inc.
369 S. Doheny Dr. PMB 1105
Beverly Hills, CA 90211

Dated: as of November 10, 2010

Matthew F. Jones 1517 Rugby
Avenue Charlottesville, VA,
22903

Re: "Boot Tracks" Dear

Matthew:

This will confirm the terms of the agreement between Matthew F. Jones ("you") and Dirt Blossom, Inc.. ("Producer") relating to: a) the original, entirely-fictional, unexploited screenplay written by you entitled "Boot Tracks" (the "Screenplay"); and b) the original, entirely-fictional book written by you also entitled "Boot Tracks" (the "Book"). (The Screenplay and Book, all present and future drafts, versions and adaptations of either are referred to collectively as the "Property".)

1. Option. You hereby grant Producer the exclusive and irrevocable option (the "Option") to acquire exclusively, perpetually and throughout the universe all of the rights referred to in Paragraph 7 below, including the right to develop and produce one or more motion pictures based upon the Property (the first of which shall be referred to as the "Picture").

2. Option Consideration. As consideration for the Option, Producer shall pay you the sum of Fifty Dollars ($50) ("Option Price"); payable promptly following the full execution hereof. The option period will initially extend from the date hereof until November 22, 2010 (the "Option Period"). The Option Price shall not be applicable against the Purchase Price (defined below). The Option Period shall be automatically extended for an additional (90) days automatically if, at the time of expiration of the intial Option Period, Echo Bridge is in active negotiations with a bank or other financer for the financing of the Picture.

3 Option Suspension. The Option Period, as it may be extended, will be automatically suspended and extended by any period during which development and/or production activities based on the Property are interrupted, postponed or hindered by any occurrence of force majeure or by the unavailability of a member of the principal cast or the director of the Picture.

4 Purchase Price: Contingent Compensation,     (a) Producer may exercise the Option by giving you written notice prior to the expiration of the Option Period, as the same may be extended. If Producer exercises the Option, you shall be paid the sum of Seventy-Five Thousand Dollars ($75,000) ("Purchase Price"). This sum will not include the

2

$50.00 payment received for the Option Price, as defined above in paragraph 2. The Purchase Price shall be paid to you promptly following Producer's exercise, if any, of the Option (but in no event later than the commencement of principal photography on the Picture).

(b) In addition, you will receive contingent compensation in an amount equal to 22% of Producer's adjusted gross receipts from the exploitation of the Picture, less any third party participations, and on a "favored nation's" basis with David Jacobson and Larry Rattner. Producer's adjusted gross receipts shall be defined as nonrefundable gross receipts earned and received by Echo Bridge Entertainment from the exploitation of the Picture, less: (a) Echo Bridge Entertainment Distribution Fees of 20% for the international territory and 10% for the United States territory; (b) any producer's representative commission on the United States Territory, if applicable; (c) marketing expenses incurred by Echo Bridge (capped at $100,000); (d) any direct, out of pocket third party costs and expenses (i.e. taxes, residuals, etc.); and (e) any deferments. Any third party participations and/or contingent compensation will be deducted off the 66% of Producer's adjusted gross receipts which represent the collective share of Producer's adjusted gross receipts to be received by you, Larry Rattner and David Jacobson. Producer will provide and will use reasonable good faith efforts to cause the financier and/or distributor of the Picture to agree to provide Owner with regular accounting statements and an independent right of audit in connection with the Picture. Additionally, you may examine the records and accounts of Producer or its permitted assignee but only insofar as such records and accounts relate to the Picture. You may not examine such records more than one time per year. Your share of Producer's adjusted gross receipts will be paid concurrently with the payment of Producer's adjusted gross receipts to David Jacobson and Larry Rattner.

5 <u>Credit.</u> Your writing credits on the Picture, on screen and in paid advertising, shall be in accordance with the principles of the applicable WGA Agreement. In addition to your credit as the sole author of the motion picture's screenplay, you will also receive a credit as the author of the novel from which the screenplay was adapted, with the book's title in the credit. Your writing credits will appear on two separate cards (one as the sole author of the motion picture's screenplay and one as the author of the novel from which the screenplay was adapted) in the main titles of the Picture in the same size and font as the credit accorded to the director of the picture. You will also be accorded writing credits in the billing block and in paid advertising and on posters and video and/or DVD boxes relating to the motion picture whenever the Director's credit appears in the same size and font as the credit afforded to the Director. In addition, you shall receive a Co-Producer or Executive Producer credit on a single or shared card in the main credits and in the billing block whenever a credit is accorded to any individual producer. All other aspects of any such credit shall be at Producer's sole discretion. No casual or inadvertent failure by Producer to comply with this paragraph, nor any failure by third parties, shall constitute a breach hereof. If Producer fails to accord you credit pursuant to the terms of this agreement, promptly following receipt of written notice setting forth in detail such failure, Producer agrees to use reasonable efforts to prospectively cure such failure, but nothing shall require Producer to cease using or to replace prints, negatives or other materials then in existence. All references in this agreement to the customary credit exclusions and policies of Producer shall mean the following forms of advertising: group, list, institutional or so-called teaser advertising, publicity and exploitation; special advertising; advertising

3

relating primarily to the source material upon which the Picture is based, or to the author, any member of the cast, the individual, executive or associate producer, the director or any other personnel involved with the production of the Picture, so called "award" or "recognition;" advertisements, including advertisements or announcements relating to consideration or nomination for an award in which the only individual named is the nominee or recipient; trailers or other advertising, publicity or exploitation on screen; advertising on radio or television; advertising in film markets and the like; advertising eight (8) column inches in size or less; outdoor advertising (including, but not limited to, so-called 24-sheets); theater display advertising; advertising relating to subsidiary or ancillary rights in the Picture (including, but not limited to, novelizations, screenplay and other publications, products or merchandising and soundtrack recordings); advertising in which no credit is accorded other than credit to one (1) or two (2) stars of the Picture and/or Producer and/or any other company financing or distributing the Picture; advertising, publicity and exploitation relating to by-products or commercial tie-ups; and other advertising not relating primarily to the Picture.

6  Grant of Rights. (a) If Producer exercises the Option, then all rights, now known or hereafter devised, including, without limitation, all rights of copyright and all motion picture, television and all other audio-visual rights, and allied and ancillary rights, in and to the Property shall be deemed immediately, automatically, exclusively and irrevocably granted and assigned to Producer, in perpetuity and throughout the universe. Such rights include, without limitation, all theatrical, television (whether filmed, taped or otherwise recorded, and including series rights, subscription, pay, cable and satellite television rights), CD rom and interactive rights, cassette, disc and other compact device, sequel, remake, advertising and promotion rights (including the rights to broadcast and/or telecast by television and/or radio or any other process, now known or hereafter devised, any part of the Property or any adaptation or version thereof, and announcements of and concerning same); all rights to exploit, distribute and exhibit any motion picture or other production produced hereunder in all media now known or hereafter devised; all rights to make changes to and adaptations of the Screenplay (and you hereby waive all moral rights); character, merchandising, commercial tie-in, soundtrack, music publishing, internet, wireless and exploitation rights; the right to use your name, approved likeness and approved biographical material in and in connection with the exploitation of the rights granted hereunder (provided, however, that there shall be no use of your name, likeness or biographical material for commercial endorsement purposes without your prior consent); and all other rights customarily obtained in connection with literary purchase agreements.

(b)  Notwithstanding the foregoing paragraph, Producer hereby expressly acknowledges and agrees that the grant of rights expressed in the foregoing paragraph does not include any publication rights (including books-on-tape, print, audio and electronic text publication rights); radio rights: legitimate stage rights: or any rights, including the granted rights, in Author written sequels, which are hereby expressly reserved by you.

(c)  If principal photography of the Picture does not commence within the one (1) year period (the "Reversion Period") commencing upon the date on which Producer exercises the Option, if ever, then all of Producer's rights hereunder shall immediately and automatically revert to you.

4

(d) The Reversion Period shall be automatically suspended and extended by any period during which development and/or production activities based on the Property are interrupted, postponed or hindered by any occurrence of force majeure.

7 Transportation. You will be provided with one roundtrip plane ticket to the city where the Picture is being filmed. In addition, you will receive accommodations on a favored nations basis with the individual producer and director of the Picture. In addition, if Producer requires you to render services on the Picture more than 50 miles away from your principal residence (a "Distant Location"), then Producer shall furnish you with roundtrip transportation, and, while you are at such Distant Location at Producer's request, reasonable accommodations and living expenses (a reasonable per diem or food allowance) on a favored nations basis with the individual producer - and director - of the Picture.

8. Warranties and Indemnities. You represent and warrant that you are the sole and exclusive owner throughout the universe of all rights (including all rights of copyright), title and interest of every kind and nature in and to the Property; that you have the full and sole right and authority to enter into this agreement and make the grant of rights made herein; that no third party has the right (and you shall not, except as provided in this agreement, grant the right to any third party) to produce any production based, in whole or in part, upon the Property; that the Property is wholly original with you and that you are the sole author thereof; that no claims or litigation exist relating to the Property or purporting to question or adversely affecting the rights granted herein; and that, to the best of your knowledge (or that which you should have known in the exercise of reasonable prudence), the Property will not violate the rights of privacy of, or constitute a libel or slander against, or violate any common law or other rights of any person or entity. You further represent and warrant that you have not entered into and shall not enter into any agreement, and that you have not made and shall not make any grants of any nature whatsoever, which would or might in any way prevent, conflict or interfere with Producer's full and complete exercise and enjoyment of each and all of the rights granted or agreed to be granted to Producer hereunder, nor shall you in any way encumber or hypothecate said rights or any of them, or do or cause or permit to be done any act or thing by which said rights or any of them might in any way be impaired. You agree to and shall defend and indemnify Producer (and Producer's licensees, successors and assigns) against and from any and all liability, loss, cost (including reasonable attorneys' fees) and damages incurred as the result of any breach of any representation, warranty or agreement made by you under this agreement. Excepting any matters which are subject to your indemnification, and excepting any matters arising out of your tortious acts or omissions or your breach of contract, Producer agrees to indemnify and hold you harmless from and against any claims, liability, loss and expense, including reasonable outside attorneys' fees, you may suffer by reason of (i) any materials furnished by Producer in connection with the Picture (ii) any breach of any representation, warranty or agreement made by Producer in this agreement, or (iii) the development, production or distribution of the Picture. The option period and the Reversion Period shall be automatically suspended and extended during the pendency of any claim or litigation involving or relating to any representation, warranty or agreement made by you hereunder; provided that the option period and the Reversion Period shall not be suspended and/or extended for more than one year in connection with any claim for which an action is not commenced within one year from the notification of said claim (it

5

being agreed that the option period and the Reversion Period shall be suspended and extended if an action relating to said claim is at any time commenced).

9. Insurance. Producer warrants and represents that you shall be covered under Producer's errors and omissions and general liability policies in connection with Producer's production and exploitation of the Picture, subject to the terms, conditions and limitations of such coverage. You further acknowledge that any such coverage shall not in any way limit or restrict your representations or warranties hereunder.

10. Publicity. You will not furnish, distribute or authorize any advertising material or publicity (other than non-derogatory publicity which relates prknarily to you and which incidentally mentions the Picture and/or your services therein) of any form relating to the Picture, your services in connection therewith, Producer, its operations or personnel, or any exhibitors or broadcasters of the Picture, to any person or entity other than Producer and its respective agents or employees, without the prior written approval of Producer in each case.

11 Rental and Lending Rights. You hereby irrevocably assign, license and grant to Producer, throughout the universe in perpetuity, your rights, if any, to authorize, prohibit and/or control the renting, lending, fixation, reproduction and/or other exploitation of the Picture by any media or means now known or hereafter devised as may be conferred upon you under any applicable laws, regulations or directives, including, without limitation, any so-called "Rental and Lending Rights" pursuant to any European Economic Community ("EEC") directives and/or enabling or implementing legislation, laws or regulations enacted by member nations of the EEC. You hereby acknowledges that the compensation payable hereunder includes adequate and equitable remuneration for the Rental and Lending Rights and constitutes a complete buy-out of all Rental and Lending Rights. In connection with the foregoing, you hereby irrevocably grant unto Producer, throughout the universe in perpetuity, the right to collect and retain for Producer's own account any and all amounts payable to you in respect of Rental and Lending Rights and hereby irrevocably directs any collecting societies or other persons or entities receiving such amounts to pay such amounts to Producer.

12. DVD. Provided you are not in material breach hereof, you shall receive one DVD of the Picture, free of charge, for your personal use only, promptly following the date on which DVD's are available to the general public.

13. Premiere. Provided you are not in material breach hereof, Producer shall invite you and a guest to the initial United States premiere of the Picture, if any. Transportation and accommodations to attend the premiere of the Picture or the screening of the Picture at a major festival (i.e. Cannes, Toronto, Berlin or Sundance) shall be provided on a favored nations basis if accommodations and transportation is provided to the individual producer or the director of the Picture.

14. Relationship. Nothing contained in this agreement shall be construed to make you and Producer partners, joint venturers or agents of one another, or (except as expressly provided herein) give you any interest whatsoever in any of the results or proceeds derived from the exercise of the rights granted or agreed to be granted hereunder.

5

6

Nothing contained herein shall be deemed to obligate Producer to produce the Picture or make any other use of any right, title or interest in and to the Property acquired by Producer hereunder.

15. <u>Further Documents.</u> You agree to execute and deliver to Producer such further documents as may be reasonably required by Producer to further evidence or carry out the purposes and intent of this agreement, and you hereby irrevocably appoint Producer as your attorney-in-fact (which appointment is coupled with an interest) with full power of substitution to execute, verify, acknowledge and deliver any documents you may fail to promptly execute, verify, acknowledge and/or deliver after Producer's request therefor. Producer shall provide you with copies of any such documents promptly after execution thereof. Without limiting the generality of the foregoing, concurrently with the execution of this Agreement, you shall execute and deliver to Producer a short form Option Agreement and a short form Assignment in the forms attached hereto. You further agree that Producer may, upon receipt of the executed short form Option Agreement, immediately record same with the U.S. Copyright Office and/or with the copyright office of any other country. The short form Assignment shall not be recorded unless and until Producer has exercised the Option, at which time, but not before, Producer shall have the right to insert therein as the effective date thereof the date on which the Option was exercised. If Producer shall fail to exercise the Option, then your signature to said Assignment shall be void and of no further force or effect whatever, and Producer shall not be deemed to have acquired any rights in or to the Property other than the Option and the related rights provided for in this Agreement.

16. <u>Payments and Notices.</u> Payments and/or notices shall (unless and until written notice to the contrary is received) be sent to the addresses set forth above. The date of mailing or of personal delivery, as the case may be, shall be deemed the date of service.

17. <u>Remedies.</u> In the event of any failure or omission by Producer constituting a breach hereunder, your rights and remedies shall be limited to the right, if any, to obtain damages at law, and you shall have no right in such event to seek or obtain injunctive or other equitable relief or to rescind or terminate this agreement or any of Producer's rights hereunder. Producer shall not be deemed in breach of this agreement unless and until Producer receives written notice from you specifying the alleged breach and unless Producer fails to cure such breach within 10 business days after receipt of such notice.

18. <u>Assignment.</u> This agreement shall be binding upon and inure to the benefit of your and Producer's respective licensees, successors and assigns. Producer may assign or transfer all or any part of Producer's rights under this agreement to any financially responsible person or entity.

19. <u>Entire Agreement; Modifications; Choice of Law.</u> This agreement sets forth the entire understanding between you and Producer, cannot be modified except by a writing signed by the party to be charged, and shall be construed in accordance with the laws of the State of California.

20. <u>WGA Agreement.</u> Writer expressly agrees and acknowledges that this Agreement, including, without limitation, all services to be rendered by Writer hereunder,

shall not be subject to the jurisdiction of the Writers Guild of America ("WGA") or the WGA Basic Agreement, or subject to the Writers Guild of Canada ("WGC") or the WGC Independent Production Agreement.

   Please indicate your agreement to the terms of the foregoing by signing where provided below.

        Very truly yours,

        Dirt Blossom, Inc.

        *David Jacobson*

        By:_____   Title: *President*
        _____   Dated: *12/ 19 / 2 0 1 0*

**AGREED AND ACCEPTED:**

Matth ew F. Jones

Dated:

# Dirt Blossom, Inc.
## 369 S. Doheny Dr. PMB 1105
## Beverly Hills, CA 90211

Dated: as of November 10, 2010

Matthew F. Jones 1517
Rugby Avenue
Charlottesville, VA, 22903

David Jacobson 6901 Waring
Ave. Los Angeles, CA
90038

Larry Rattner
369 S. Doheny Drive, PMB #1105
Beverly Hills, CA 90211

Gentlemen,

This letter will document our *agreement* regarding our involvement and participation in the motion picture "Boot Tracks" (the "Picture"). *All* creative decisions *relative to the making and producing of "Boot Tracks" (The Picture) will be* determined by the creative participants of "Boot Tracks" (the Picture)- the director, David Jacobson, producer Larry Rattner and writer/co-producer Matthew F. Jones (the "CP") and shall be jointly discussed and shared by all three members. If there is not a unanimous consensus on any issue or element, such decisions will be made on *a* majority vote whereby each of the CP has an equal vote.

In addition, all contingent compensation, contingent compensation payments, travel and accommodations provided by the production to any member of the CP for **the shooting of the film,** festivals, premieres, dressing rooms, per diem, etc. shall be provided on a most favored nations basis between the three members.

Please indicate your agreement to the terms of the foregoing by signing where provided below.

Very truly yours, Dirt

Blossom, Inc.

By: *David Jacobson*

Title: *President*

Dated: *11/19/2010*

AGREED AND ACCEPTED:

Matthew F. Jones

Dated: *11/18/2010*

David Jacobson

Dated: *11/19/2010*

Larry Rattner

Dated: *11/21/10*

## SHORT FORM OPTION AGREEMENT

KNOW ALL MEN BY THESE PRESENTS: That in consideration of the payment of One Dollar and other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned, Matthew F. Jones does hereby grant to Dirt Blossom, Inc. ("Producer") and its assigns, successors, licensees and transferees forever, the exclusive and irrevocable right and option to purchase from the undersigned all rights of every kind, now known or hereafter devised (but excluding publication rights), including, without limitation, all rights of copyright and all audio-visual rights, including, without limitation, the sole and exclusive motion picture (silent, sound, musical and/or talking), television, phonograph record, merchandising and commercial tie-up rights, and all allied and ancillary rights, throughout the universe, in perpetuity, in and to that certain original, entirely-fictional, unexploited screenplay and that certain original, entirely-fictional book, each described as follows:

> TITLE:        "Boot Tracks"
>
> AUTHOR:    Matthew F. Jones

including all contents thereof, and the theme, title and characters thereof, and in and to the copyright thereof, everywhere throughout the universe, and all renewals and extensions of such copyrights.

The undersigned and Producer have entered into that certain literary option/purchase agreement (the "Agreement"), dated as of November 10, 2010 relating to the transfer and assignment of the foregoing rights in and to said literary works. Without limiting the generality of the foregoing, this Short Form Option Agreement shall be deemed to include, and shall be limited to, those rights of whatever nature which are included within the Agreement, which is not limited, added to, modified or amended hereby, and this Short Form Option Agreement is expressly made subject to all of the terms, conditions and provisions contained in the Agreement.

IN WITNESS WHEREOF, the undersigned have executed this instrument as of November 10,2010.

_Matthew Jones_

Matthew F. Jones

Name & Address:
AARONSON & AARONSON
ARTHUR AARONSON, SBN 64988
16133 Ventura Boulevard, Suite 675
Encino, California 91436

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Matthew Jones, an individual<br><br>PLAINTIFF(S)<br><br>v.<br><br>DIRT BLOSSOM, INC., a California corporation;<br>DAVID JACOBSON, an individual; LARRY<br>RATTNER, an individual; and DOES 1-20<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV11-07317 JHN (JEMx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): DIRT BLOSSOM, INC., DAVID JACOBSON and LARRY RATTNER

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Arthur Aaronson_____, whose address is _16133 Ventura Blvd., Suite 675, Encino, CA 91436_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____SEP - 6 2011_____

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                     SUMMONS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Jacqueline Nguyen and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV11- 7317 JHN (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Matthew Jones

**DEFENDANTS**
Dirt Blossom, Inc, a California Corporation; Larry Rattner, an individual; David Jacobson, an individual; and Does 1-20

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
ARTHUR AARONSON, SBN 64988    Phone: (818)783-3858
16133 Ventura Blvd., Suite 675    Fax:   (818)783-3825
Encino, CA 91436

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $** 500,000.00 plus punitive damages

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement 17 USC Section 101, et. seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions |  |  | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land |  |  |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 245 Tort Product Liability |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |

CV11-07317

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Virginia |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date September 2, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |